**In re RENAISSANCE RESIDENTIAL DEVELOPMENT ASSOCIATES, a New York Limited Partnership, Debtor.**

**Bankruptcy No. 891–83816–478.**

United States Bankruptcy Court, E.D. New York.

Oct. 23, 1992.

Philip Irwin Aaron, P.C., Philip Irwin Aaron, Syosset, N.Y., for Marvin and Stanley Gerla.

Robinson Silverman Pearce Arohnson & Berman, Robert A. Wolf, New York City, for Crossland Federal Sav. Bank by F.D.I.C. as conservator.

Marc Stuart Goldberg & Associates, New York City, for debtor.

Scott Y. Stuart, Garden City, N.Y., Office of U.S. trustee.

DOROTHY EISENBERG, Bankruptcy Judge.

Marvin and Stanley Gerla (the "Gerlas") brought on the instant Order to Show Cause seeking to stay a foreclosure sale scheduled by Crossland Federal Savings Bank ("Crossland") of a second mortgage (the "Second Mortgage") which was pledged to Crossland by the Gerlas as collateral security for a loan in the amount of $750,000.00. Crossland has made a cross-motion to stay a foreclosure sale scheduled by the Gerlas of the Second Mortgage.

## FACTS

Renaissance Residential Development, a New York Partnership (the "Debtor") filed a petition pursuant to Chapter 11 on August 26, 1991. The Debtor's sole asset consists of a vacant one hundred fifteen (115) acre parcel of real property (the "Property"). The Property was originally owned by the Gerlas subject to a First Mortgage held by Crossland in the original amount of $1,792,000.00. This loan was personally guaranteed by the Gerlas and their wives.

Two (2) months later, the Gerlas sold the premises to the Debtor for the purchase price of $5,170,000.00, which was subject to a first mortgage (the "First Mortgage"). As part of that purchase, the Debtor delivered the Second Mortgage in the principal amount of $2,378,000.00 to the Gerlas. The Gerlas remained as guarantors to Crossland of the First Mortgage.

The Debtor defaulted in its obligations under the First and Second Mortgages, and prior to the petition date, the Gerlas commenced a foreclosure action upon its Second Mortgage. The foreclosure sale was noticed for August, 1991, which sale was stayed by the filing of the Debtor's Chapter 11 petition.

In an unrelated transaction, the Gerlas were in default on another loan made by Crossland. The Gerlas and Crossland agreed to restructure the obligation, whereby Crossland agreed to forgive the Gerlas a certain amount of debt under the loan in exchange for, *inter alia*, an additional note from the Gerlas in the principal amount of $750,000.00, secured by a pledge of the Second Mortgage. In connection with the proposed arrangement, a written Standstill Agreement was entered into between the Gerlas and Crossland on September 25, 1991, pursuant to which Crossland agreed to forbear from exercising its rights under the First Mortgage, provided that: (i) the Gerlas made all payments under the First Mortgage at the time and in the amount set forth, and (ii) the Gerlas agreed to execute and deliver to Crossland a note in the amount of $750,000.00 and a collateral assignment to Crossland of the Second Mortgage and note. The Standstill Agreement provides in relevant part as follows:

[I]n the event that the Gerlas shall default in any of their obligations hereunder ... (Crossland) shall have the right to exercise any rights or remedies which Crossland may have under the additional note and collateral assignment.

The Standstill Agreement further provides that in exercising its rights and remedies, Crossland is entitled to recover only up to $750,000.00 (*i.e.* the amount of the loan), plus any costs and expenses incurred by Crossland.

On November 4, 1991, a Collateral Assignment of Mortgage was executed by the Gerlas which assigned to Crossland all of the Gerlas' "right, title and interest" in and to the Second Mortgage. Crossland recorded its security interest in the collateral assignment in the Suffolk County Clerk's Office on November 18, 1991. In addition, Crossland retained possession of the instruments.

On July 21, 1992, the Gerlas, the Debtor and Crossland entered into a subsequent stipulation (the "July Stipulation") which provided, *inter alia*, that the automatic stay would be lifted to permit the Gerlas to exercise their rights under the Second Mortgage on July 25, 1992 under certain circumstances. The Debtor was to repay Crossland and the Gerlas on the First and Second Mortgages on or before July 24, 1992, and in the event that such payment did not occur, Crossland and the Gerlas had the "absolute right to immediately pursue all appropriate legal remedies to recover the indebtedness due and owing upon the two (2) said mortgages", including, but not limited to, completing the foreclosure proceedings which were pending in the Supreme Court of the State of New York.

The Debtor did not make the payments under the July Stipulation, and Crossland gave notice of a scheduled foreclosure sale of the Second Mortgage.

Crossland contends that the pledge of the Second Mortgage as collateral security for the $750,000 loan entitles it to foreclose upon the *entire* Second Mortgage in the event of a default under the $750,000 loan, because the relevant documents assign to Crossland all of the Gerlas' "right, title and interest in and to the Second Mortgage." The Gerlas brought on an Order To Show Cause to stay Crossland's foreclosure sale, asserting that Crossland is not entitled to conduct a foreclosure sale of the entire Second Mortgage, but rather is entitled to conduct a foreclosure sale of its interest in the Second Mortgage, which is akin to a participation interest. The Gerlas further assert that if Crossland is permitted to conduct a foreclosure sale of the Second Mortgage, the Gerlas' remaining interest in the Second Mortgage would be extinguished, leaving the Gerlas empty-handed.

On August 13, 1992, a subsequent stipulation was entered into by the Gerlas and Crossland concerning the respective rights of the Gerlas and Crossland to payment under the foreclosure sale for the First and Second Mortgages (the "August Stipulation").

In an effort to protect the interests of the Gerlas and Crossland, the following solution was fashioned. The August Stipulation provides that the Gerlas' scheduled foreclosure sale of the Second Mortgage would be postponed to August 26, 1992. In the event the Gerlas' purchaser is a successful bidder, said purchaser will deliver to Crossland a collateral assignment of the Gerlas' purchaser's successful bid as further security for the $750,000.00 loan from Crossland to the Gerlas.

The August Stipulation further provides that the Court is to determine whether Crossland has a valid security interest in the entire Second Mortgage pursuant to the pledge of the Second Mortgage and whether Crossland is entitled to conduct a Uniform Commercial Code ("UCC") foreclosure sale upon the Second Mortgage. If the Court finds that Crossland has a valid security interest in the Second Mortgage and Crossland has the right to conduct a UCC foreclosure sale, then Crossland shall be entitled to immediately schedule a UCC foreclosure sale and the successful bidder shall be entitled to delivery of the referee's deed of the Property and the Second Mortgage from the Second Mortgage foreclosure action. If the Court determines that the bid assignment is null and void,

then the referee's deed of the premises and the Second Mortgage shall be delivered to the Gerlas' purchaser, subject to the terms of the July Stipulation.

## ISSUE

The issue before the Court is as follows: does Crossland, which has received a pledge of the Second Mortgage as collateral security for the $750,000 loan, have the right to foreclose on the entire Second Mortgage upon default of the $750,000 loan?

## DISCUSSION

With respect to the validity of Crossland's security interest in the Second Mortgage, it is clear from the language of the relevant documents that Crossland has received an assignment of the Second Mortgage by way of collateral security for the loan and note in the amount of $750,000. Pursuant to UCC section 9–305, security interests like a note and mortgage are perfected by the secured party's taking possession of the collateral. Both parties agree that Crossland has so perfected its security interest in these instruments. Where Crossland and the Gerlas disagree is over the extent of Crossland's rights as pledgee in and to the Second Mortgage.

Under New York real estate law, a pledgee to a mortgage as security for a debt has a superior interest in the mortgage, and said pledge constitutes a complete assignment of the mortgage. 78 *N.Y.Jur.* § 548 (The Lawyer's Cooperative Publishing Co., 1989). The pledgee may bring the action and will be deemed a trustee of the pledgor for any of the mortgage debt remaining after satisfying the pledgee's claim. *Norton v. Warner,* 3 Edw. Ch. 106.

However, in cases where the mortgage has been pledged as collateral security for a debt which is *less* than the amount of the mortgage, the pledgee has a defeasible title in the property, which is extinguished upon payment of the debt. Rasch, 2 *Real Property Law and Practice* § 1805 (Baker, Voorhis & Co. 1962). This

is true even if the documents of assignment are "absolute in form." *Id.* The pledgee is still entitled to foreclose on the pledged mortgage, but the pledgor must be joined as a necessary party to the pledgee's bill of foreclosure. The pledgor can be joined as a co-plaintiff or may be made a defendant to the foreclosure action in order to either redeem the mortgage on paying the debt or to show that he has paid his debt and is entitled to a re-assignment. *Johnson v. Hart,* 3 Johns Cas. 322; *Bloomer v. Sturges,* (1874) 58 N.Y. 168. Likewise, the pledgor can maintain a foreclosure action of the mortgage if the pledgee is joined as co-plaintiff or third-party defendant. *See Simson v. Saterlee,* 64 N.Y. 657 (1876); 3A *Warren's Weed Real Property,* § 5.02 (4th Ed. Matthew Bender & Co. 1991) (*citing Dalton v. Smith,* 86 N.Y. 176 (1881).

Once both the pledgee and pledgor bring a joint foreclosure action, the rights of both parties are foreclosed by the judgment of foreclosure, but the rights as between the pledgee and pledgor are not affected.

Whether the pledgee brings the action or becomes a third-party defendant to the pledgor's foreclosure action, the pledgee collects only the amount of the pledge, in this case $750,000.00, plus costs and fees. *See First National Bank of Highland v. Chodikee Lake Farm Camp,* 279 A.D. 953, 110 N.Y.S.2d 819 (3d Dept.1952) (pledgee of mortgage entitled to collection on foreclosure up to amount of debt). The pledgor's rights will be foreclosed by the judgment, but his claim to proceeds of the sale will survive the judgment with respect to any existing deficiency. *Title Guaranty & Trust Co. v. Leopoldt,* 248 A.D. 919, 290 N.Y.S. 680 (1936).

## CONCLUSION

The Court finds that Crossland has a valid security interest in the pledge of the Second Mortgage, which is superior to the Gerlas' position as mortgagee. However, although Crossland has a valid security interest with regard to the pledge of the Second Mortgage, Crossland cannot fore-

close on the Second Mortgage in its entirety, upon the Gerlas' default under the $750,000.00 mortgage, unless the Gerlas are joined in the foreclosure action, either as third party defendants or co-plaintiffs. Likewise, the Gerlas cannot foreclose on the Second Mortgage in its entirety, upon the default of the Debtor, unless Crossland is joined as a party to the foreclosure action. Since both parties are necessary to foreclose on the Second Mortgage in the event of a default, a joint foreclosure sale shall be scheduled. Crossland shall be paid first out of the proceeds of the sale up to the amount of the $750,000 loan, plus costs and reasonable expenses pursuant to the pledge of the Second Mortgage. The Gerlas have the right to collect any proceeds in excess of the loan amount due to Crossland from the foreclosure sale and will have a claim against the Debtor for any remaining deficiency under the Second Mortgage. Any previous foreclosure sale or proceeding to foreclose on the Second Mortgage by Crossland or the Gerlas shall be set aside if it fails to join necessary parties.

Settle an Order in accordance with this decision.